Good morning, Your Honors. May it please the Court, my name is Stacey Tolchin and I represent the Galvez family who is here with us today. I'd like to reserve three minutes of my time for rebuttal. Petitioners are a father and mother and daughter from Mexico. Petitioners Jose and Maria have three United States citizen children in addition to their daughter Alma. Could you speak just a little louder? Sure, sorry. Alma has been here since she was nine months old and has a U.S. citizen husband now and a child and another on the way. Maria and Jose have a youngest daughter Maribel, a U.S. citizen, who is severely disabled and has been diagnosed with mental retardation, is unable to walk or talk, and has a seizure disorder. Petitioners, however, have never had the opportunity for a discretionary hearing before an immigration judge on their application to stay in the United States. Despite the fact that it would cause unquestionable hardship to this family if the Galvez's were deported. The Court should vacate the BIA's decision for three reasons. First, the Board clearly erred in finding that Jose Galvez was ineligible for cancellation of removal. He does not have an aggravated felony conviction because he was sentenced to only 19 days in custody and his felony conviction from 1995 was reduced to a misdemeanor. It therefore falls under the petty offense exception and he is eligible for cancellation of removal. Next, the Court should find that petitioners are eligible for suspension of deportation, which was repealed by IHRA-IHRA, but which would still be available because petitioners affirmatively presented themselves to INS in August of 1996, prior to IHRA-IHRA's September 30, 1996, enactment date. The Court's decisions in Jiménez-Ángeles and its progeny are distinguishable. In addition, the Court should reconsider Jiménez-Ángeles in light of the Fernández-Vargas decision and Fernández-Vargas' recognition that a quid pro quo agreement is not required for purposes of Landgraf and that an undocumented alien may have a claim that a statute is impermissibly retroactive under the Landgraf analysis. Last, the Court should conclude that Alma and Maria's cases should be sent back to the Board on the issue of voluntary departure. The Board issued 30 days of voluntary departure under its Chulliaras decision, which was proper at the time, but after the petition for review was filed in this case, the Board withdrew from the Chulliaras policy in light of amendments that were made by IHRA-IHRA to the voluntary departure provisions, and it issued matter of A.M. This Court On that subject, has the BIA spoken itself to the question of whether the change should apply retroactively? It has not, Your Honor. Therefore, the Court should remand the case just for that purpose as well for Alma and Maria, as to say they did not receive voluntary departure. Now, as to the first issue, Respondent does not defend the Board's decision in this case. The Board clearly erred in finding that there was an aggravated felony, as the petitioner was sentenced to only 19 days in jail. A year or more of a sentence is required for an aggravated felony conviction. In addition, even in the record before the immigration judge, the evidence shows that the felony conviction for Penal Code Section 273.5 was reduced from a felony to a misdemeanor. It sounds as though the government is not disagreeing with you on this point. Right. I think the only issue is whether or not the Court should issue a finding of statutory eligibility, and under the Court's decisions in Garcia-Lopez and under the Board's decision in Garcia-Hernandez, the Court should find that Jose Galvez is statutorily eligible for cancellation. I see. And the government has not conceded that. We'll ask the government. Okay. As to the next issue, petitioners appeared before INS in August of 1996, prior to the enactment of IHRA-IHRA on September 30th. At the time, they were eligible for suspension of deportation, and they appeared with a unit in Los Angeles, INS, that allowed people to get written up. They, of course, were not written up for proceedings until 1998, which was after the law changed. This case is distinguishable from Jimenez-Angeles, Vasquez-Zavala, Ramirez-Zavala because those cases involved people who presented themselves after IHRA-IHRA's enactment date. Lopez-Urrenda is distinguishable. But what is really that different? Because in none of the cases did the service initiate action, and there's clear case that the service initiated action. And so, in this case, the law is saying you don't have a cause of action or a private right of action to require the service to initiate action. Well, Your Honor, I think it is different based on the Hernandez-D'Anderson decision. One of the four factors in Hernandez-D'Anderson was the fact that Hernandez-D'Anderson applied for naturalization prior to IHRA-IHRA's effective date, and so she was not on notice of the change in law. And that's the same thing that happened here. In addition, okay. But what reliance would there be? I mean, it's sort of like a negative case. Even if it's concluded that the Petitioners aren't aware, it's not like they're relying upon something that should insulate them from Congress's determination that the law should change and that the change should apply retroactively. It's not like a – it's not the sincere situation where you've got affirmative action in the case of a plea bargain, a guilty plea or something giving up rights that later turn out to come back and bite you. What did Petitioners do that came back and bit them in reliance upon the prior policy? They actually made this appointment and met with INS. And had they not been eligible for suspension of deportation, they would not have made the appointment. That doesn't mean they couldn't have been brought into the system in some other way. They certainly could have. And had they been, you know, served before those seven years were up and under the RAM versus INS decision, their time would have been cut off. But, in fact, they were not served until long after. And the fact that they made the appointment shows their settled expectation that they would have been placed into deportation proceedings and eligible for suspension. What do we – I mean, this is another one of these miserable cases where the unscrupulous notarios in a sense almost lure these clients into their doom. I mean, and we're familiar with them. We've seen a whole lot of them. And they're just miserable cases. I have trouble, however, distinguishing this one from him and his anglers because they had no – ordinarily settled expectations is here's what the law is. You have a right to rely on the law. The notario misrepresented to them what the law was or maybe just didn't even tell them what the law was and, hey, we'll take care of you. But they didn't – they were – at the time they come forward, there was nothing that gave them any settled expectation. Well, there was a policy of writing people up into deportation proceedings so that they could apply for suspension. This – you know, suspension was not guaranteed. Certainly in this case it's a phenomenal case and the hardship that would be caused to the U.S. citizen daughter. So I think at the time it was a reasonable expectation and a settled expectation that they'd be placed into proceedings and be able to apply for suspension. I do also want to point out that Fernandez-Vargas does seem to do away with any requirement of a quid pro quo agreement, as the court recognized in Hernandez v. Anderson. And it does certainly in its analysis recognize that an undocumented immigrant who comes to the U.S. illegally, that he may have settled expectations of being eligible for relief if he affirmatively presents himself and is eligible prior to IRA-IRA's effective date. That was the case here. I'd like to reserve my remaining time. Thank you. Thank you. May it please the Court. Jessica Siegel for Respondent Eric Holder. In this case there are three petitioners. All three of them have separate orders of removal from the Board that are all analyzed under various arguments that the petitioner has raised and facts by this Court. With respect to Petitioner Maria Castaneda, her final order of removal was solely that she was statutorily ineligible for cancellation of removal. At no point during proceedings did petitioners raise the issue whether or not they were eligible for suspension of deportation, and thus that issue is unexhausted, and this Court lacks jurisdiction to review it. Even if this Court were to review that issue, however, it should follow its decisions in Jimenez Angeles and Ramirez Zavala, which are identical in fact to this case in where petitioners had put or individuals had put themselves before INS and put themselves into proceedings, but were issued notices to appear instead of orders to show cause subsequent to the enactment of IRA-IRA. With respect to Petitioner Jose Gavalez, his proceedings should be remanded to the Board. It's important to note that the Board's plan Why? It's plainly not a 19 days. So what's to decide? Well, the Board issued its decision in the context of the claims that were raised before it. If you review the brief, his brief to the Board, as well as the notice to appeal to the Board, he challenged the immigration judge's decision based on whether or not that decision was in a discretionary nature, and his conviction was taken into account as a discretionary matter as to going to his good moral character. I'm not trying to grade their paper. I'm not saying the Board didn't do an intelligent thing based on what was in front of it. But what's to decide? Well, under Ventura and Gonzalez What's the question? What's open? It's 19 days. So it's not a felony. What's the issue? None of the other issues in this case have been decided. His entry date was never factually determined before the agency, so it's unclear whether or not he does have the physical presence required for the cancellation of removal. I see. I think I can short-circuit this. So you're conceding that this is not a disqualifying felony? Correct. Oh, boom. Okay. But the conviction may take, may be considered in terms of There may be other issues. We understand that. Right. But on the issue in front of us, it looks like it was just a misunderstanding on my part. I couldn't figure out what your argument was. Now I understand. Right. It's the issue before the Board is whether or not he's statutorily eligible, and this Court cannot reach that issue because the Board did not. So, therefore, his proceeding should be remanded under Ventura and Gonzalez. Regarding Petitioner's other claims regarding Alma's imputation of her father's residence, that issue is also unexhausted. But even if this Court were to consider it, she cannot impute time that her father physically resided in the United States, both factually and under this Court's case law. Ms. Galvez was not factually alive during the time that she wishes to impute to her father. She was only nine months old when she moved to the United States, and less than 10 years old at the time her notice to appear was issued. And also this Court's imputation cases relies solely on imputing lawful status and not physical presence while in the United States. Although I will observe, and this is an observation for you to consider and to communicate with your client, it would be anomalous in the end if the one who hasn't been alive long enough turns out to fall short on the time. I'm not speaking to the other ones, but you can imagine a situation where everybody else in the family has had enough time, but the baby is too young. That would produce a result that would not only be anomalous, but bizarre. Do you really mean to eject a child? Well, in that situation, the child would be eligible as a derivative beneficiary. If the Court has no further questions. I do have a question with regard to the voluntary departure policy, and I'll pose to you the same question that I posed to opposing counsel, which is has the Board yet spoken to the question of whether its change in policy should be applied retroactively? Not in a published decision, Your Honor. However, in this case, that is an issue that the Board should reach as is before it. The Board in this decision was correct in applying a 30-day voluntary departure order.  Therefore, under this Court's review of whether or not the Board's decision is supported by substantial evidence, that answer is clearly yes in this case. Now, is the 30 days in question because the immigration judge had previously allowed 60 days? Yes. At the time that the Board's decision was issued in this case, the Board's policy was to extend a voluntary departure order for 30 days, regardless of the amount of time that the immigration judge granted. Since that time, the Board issued matter of AM, which created a new policy or rule that said that they would grant 60 days or match the immigration judge's determination and award a voluntary departure. And that was reasoned under a variety of policy implications, not the least of which is that in 1996, the change in law created a 60-day maximum period for voluntary departure, whereas before that time and under the Board's decision in matter of Shularis, the time was infinite. And so immigration judges were issuing very long periods of voluntary departure and the Board reasoned in matter of Shularis that that was against the policy of voluntary departure. And so Congress remedied that issue in 1996 by creating a 60-day maximum, at which time the Board was still only granting 30 days, but that has changed since matter of AM. However, in this case, it's irrelevant. The Board followed its own rules at the time the order was issued. Let me ask you this, and it requires a sort of a series of ifs. If it turns out that the father in the end is eligible for cancellation of removal and indeed is granted cancellation of removal, what will happen to Alma? Would there be any derivative status that would then come? It depends on another series of ifs, Your Honor. If the Board's decisions, if this Court upholds the Board's decisions in Alma and Maria's cases, then they will have a few days left in their voluntary departure order because this Court did say the voluntary departure period. They will have a few days left in their voluntary departure order of which to depart the country. If they do that, there will be no bars upon readmission. Right. And so she could potentially become a derivative under that. It's, again, a whole other series of ifs because it would depend at what point his application is processed and what age she's at and whether or not she can be a beneficiary under any visa. So there's a whole other series of ifs down the line. It's unclear is the bottom line. So I'm not sure.   But I'm not sure at this point, Your Honor, that she possibly might be eligible as a qualifying relative. Who's the decision maker in terms of as we're going through this time period? Would it be the District Director or? We have hundreds of these cases, and I sit sometimes and stare at them and wonder who's making decisions and are they making decisions with, in this case, the whole family in front of it? Which, I'm sorry, which decisions? Well, suppose it unfolds. I mean, we're now in the hypothetical, but I'm using this as an educational process to help learn about the system. So suppose it emerges that the father's case is still alive or goes back to the board for consideration of other issues, but the mother and daughter suddenly get to their voluntary departure time. Is there anybody in a position to decide that either the family should be allowed to stay together during the pendency of what's left for the father or whether the father ultimately turns out to be eligible for cancellation or for consideration for cancellation, whether the processing can be done in a timely fashion. And I recognize the number of cases you're dealing with in the backlog, but in such a fashion so that the other members of the family can be disadvantaged for the least period of time possible. I mean, because the family is going to be divided up in the meantime based on what I hear you say. Well, let me think about it for a second. If petitioners' Maria and Alma's cases are upheld by this court, if their decisions are upheld, then once mandate is issued, their final order becomes in effect. And so at that point, nothing can put their proceedings in any sort of hold pattern pending the outcome because their orders were issued separately. And so because their orders are correct and were issued separately, they have to be dealt with separately. So as long as they're either in the judicial review system or pending at some point before a final order is issued, there's no pending final order removal. So the front end is pretty well fixed. How about the back end? Is there anybody who's in a position to deal with the father's case in such a way as that if we get to this splitting the family situation, the splitting can be kept to a minimum? In reality, the proceedings would be remanded to the board, and the board would possibly most likely remand them to an immigration judge for a full hearing, which is what he's entitled to. You know, that could be motions to expedite could be issued at that point, but I can't speak to how long that might take, and it would be before the agency at that point. I appreciate the education. And could you tell me, I think I know the answer, but you're in a position to tell me for sure, are these people outside of the 30-day voluntary departure? Have they missed it? No, because the petition for review is filed within 30 days. I see. So they are still timely. Even if the 30 days sticks, they're still entitled to voluntary departure. They just have to leave sooner? I didn't bring the docket sheet up with me, and so I don't remember exactly what date the motion for a stay of removal was filed and the petition for review. But I believe that they're at least a couple days. Okay. Thank you. Thank you. Okay. Just to clarify a few things. Petitioners have been accruing unlawful presence here. The fact that they're given voluntary departure and can leave on voluntary departure does not affect the unlawful presence. So if Alma and Maria leave, they will have a 10-year bar to returning. Alma has a U.S. citizen spouse, so she will be eligible for the waiver, which is discretionary. But Maria will not be eligible for the waiver unless Jose is granted cancellation of removal, which means she is the primary caretaker of Maribel and potentially could be outside of the U.S. for 10 years, I'm sorry, unless he is granted cancellation of removal. And it's 10 years not because of the voluntary departure, but because of? Because of the unlawful presence bar. They've been in the U.S. for a period exceeding one year unlawfully, and that unlawful presence bar is triggered once you leave the U.S. So if they try to consular process back in, she does have a U.S. citizen son who is going to be 20, so he'll soon be 21 and able to petition for her. But the son cannot be considered for the waiver for the unlawful presence bar as a relative. So the only way she can come back before the 10 years is if her husband is granted residency. Granted residency. And would the residency then come if he's granted suspension of leave or rather? Cancellation of removal. Yes, he'll be a lawful permanent resident at that point. But we are looking at, if the Court remands his case, we're looking at likely years before he's granted a cancellation of removal just because of the way the immigration court system works. In addition, I wanted to point out that there are no derivatives in cancellation of removal. So just because he's granted cancellation, it will not affect Alma, his daughter, being able to be granted. She still won't be eligible. So what's really at stake as a practical matter if we remand for determination of the retroactivity of the now 60-day voluntary departure? It doesn't appear to affect the 10-year bar, but I guess it just keeps the case alive so that they can stay in the country while that's being adjudicated? Yes, Your Honor. So that's essentially the practical point of that? Right. Right. I also want to point out that we don't dispute that the Board's decision was lawful when it issued this 30 days of voluntary departure. It was proper under Tulliaris. The Board entirely had discretion to withdraw from Tulliaris and issue matter of A.M. And that's why the NLRB v. Food Store decision from the Supreme Court requires that the court send the case back for the Board to consider whether or not its new discretionary policy applies. So what you're hoping for, if we send back the father with respect to saying, look, he's statutorily eligible, with respect at least to this felony question, you want that one to move fast and you want the question of whether or not to get the 60 days, you want that one to move slow. Essentially, I would like to obviously keep the mother and the daughter here as long as possible so that the mother would qualify to come back and to take care of Maribel. Okay. I think that's all. Thank you very much. Thank you very much. Nice arguments from both sides. Thank you. The case of Galvez-Martinez v. Holder is now submitted for decision. The next case on the calendar we have submitted on the briefs, and that's Supnet v. Holder.
judges: Hall, Fletcher W. , Clifton